IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| WTTS B.V., INEXT HOLDING B.V., DIGINEXT B.V., and MULTINEXT B.V., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 05770-GMS |
| v. | ) ) | Jury Trial Demanded |
| SMITH MICRO SOFTWARE, INC. | ) ) ) | **Public Version** |
| Defendant. | ) ) | |

## ANSWER AND COUNTERCLAIMS OF
## SMITH MICRO SOFTWARE, INC.

Defendant SMITH MICRO SOFTWARE, INC. ("Smith Micro") hereby answers

Plaintiffs' complaint as follows.

### PRELIMINARY STATEMENT

1.     Answering paragraph 1 of the complaint, Smith Micro denies that

Plaintiffs are entitled to any of the relief which they seek, based on its denials of related

specific factual allegations as set forth in the remainder of this answer.  Unless

specifically admitted in the remainder of this answer, Smith Micro denies each allegation.

2.     Answering paragraph 2 of the complaint, Smith Micro denies the

summarized factual allegations consistent with its denials of related specific factual

allegations as set forth in the remainder of this answer.

1

## PARTIES

3.     Answering paragraph 3 of the complaint, Smith Micro lacks sufficient information to form a belief as to the truth or falsity of its allegations, and therefore denies the same.

4.     Smith Micro admits the allegations of paragraph 4 of the complaint.

## JURISDICTION AND VENUE

5.     Answering paragraph 5 of the complaint, Smith Micro denies that the Court has subject matter jurisdiction, on the grounds that the amount in controversy does not exceed $75,000 exclusive of interest and costs and because Plaintiffs' claims for equitable relief are without merit.

6.     Answering paragraph 6 of the complaint, Smith Micro admits that, if the Court has subject matter jurisdiction, venue is proper in this Court.

## GENERAL ALLEGATIONS

7.     Answering paragraph 7 of the complaint, Smith Micro admits that Diginext is a European based company but lacks sufficient information to form a belief as to the truth or falsity of its remaining allegations and therefore denies the same.

8.     Answering paragraph 8 of the complaint, Smith Micro admits that it was looking for ways to expand into the European market in February 2005 but denies the remaining allegations of the paragraph.

9.     Answering paragraph 9 of the complaint, Smith Micro admits that Bruce Quigley called Edsard Ravelli in February 2005 to express Smith Micro's interest in a possible acquisition of Diginext, but denies that Plaintiffs have accurately described the

2

content of that conversation and, on that basis, denies the remaining allegations of that paragraph.

10.     Answering paragraph 10 of the complaint, Smith Micro admits that there was a conference call in February 2005 between William Smith, Bruce Quigley, and Edsard Ravelli, but denies that Plaintiffs have accurately described the content of that conversation and, on that basis, denies the remaining allegations of that paragraph.

11.     Answering paragraph 11 of the complaint, Smith Micro admits that the parties entered into a confidentiality agreement on or about February 28, 2005 but avers that the document speaks for itself and, on that basis, denies the remaining allegations of that paragraph.

12.     Answering paragraph 12 of the complaint, Smith Micro admits that Bruce Quigley sent an email to Diginext on or about March 1, 2005 but avers that the document speaks for itself and, on that basis, denies the remaining allegations of that paragraph.

13.     Answering paragraph 13 of the complaint, Smith Micro admits that Diginext sent a responsive email to Smith Micro but avers that the document speaks for itself and, on that basis, denies the remaining allegations of that paragraph.

14.     Answering paragraph 14 of the complaint, Smith Micro admits that the parties engaged in further email communications in March 2005 but avers that those documents speak for themselves and, on that basis, denies the remaining allegations of that paragraph.

15.     Answering paragraph 15 of the complaint, Smith Micro admits that Diginext provided certain information to Smith Micro on or about March 31, 2005 but

avers that those documents speak for themselves and, on that basis, denies the remaining allegations of that paragraph.

16.    Answering paragraph 16 of the complaint, Smith Micro admits it requested additional information from Diginext by email in April 2005 but avers that the document speaks for itself and, on that basis, denies the remaining allegations of that paragraph.

17.    Answering paragraph 17 of the complaint, Smith Micro admits that Diginext responded to Smith Micro in April 2005, but avers that the document speaks for itself and, on that basis, denies the remaining allegations of that paragraph.

18.    Answering paragraph 18 of the complaint, Smith Micro admits that it responded to Diginext in April 2005 but avers that the document speaks for itself and, on that basis, denies the remaining allegations of that paragraph.

19.    Answering paragraph 19 of the complaint, Smith Micro admits that it sent Diginext a letter on or about April 12, 2005 but avers that the document speaks for itself and, on that basis, denies the remaining allegations of that paragraph.

20.    Answering paragraph 20 of the complaint, Smith Micro admits that Diginext responded to Smith Micro on or about April 15, 2005 but avers that the document speaks for itself and, on that basis, denies the remaining allegations of that paragraph.

21.    Answering paragraph 21 of the complaint, Smith Micro admits that Diginext provided information about various business models which it employed but

avers that Plaintiffs have not accurately described that information and, on that basis,

denies the remaining allegations of that paragraph.

22.    Answering paragraph 22 of the complaint, Smith Micro admits

# REDACTED

and that it continued to have a strong interest in acquiring Diginext

but denies the remaining allegations of that paragraph.

23.    Answering paragraph 23 of the complaint, Smith Micro admits that it

provided a draft exclusivity agreement to Diginext on or about May 20, 2005 but avers

that the document speaks for itself and denies the remaining allegations regarding that

draft agreement.  In response to the final sentence of paragraph 23, Smith Micro admits

that Diginext responded to the draft exclusivity agreement but avers that the document

containing that response speaks for itself and, on that basis, denies the remaining

allegations of that sentence.

24.    Answering paragraph 24 of the complaint, Smith Micro admits that it

participated in a conference call with Diginext on or about June 6, 2005 but avers that

Plaintiffs have mischaracterized that conversation and, on that basis, denies the remaining

allegations of that paragraph.

25.    Answering paragraph 25 of the complaint, Smith Micro admits that the

parties entered into an exclusivity agreement on or about June 10, 2005 and that Plaintiffs

provided certain information to Smith Micro thereafter but avers that those documents

speak for themselves and, on that basis, denies the remaining allegations of that

paragraph.

5

26.    Answering paragraph 26 of the complaint, Smith Micro denies the allegations of the first sentence, avers that Plaintiffs have mischaracterized the contents of the information supplied by Plaintiffs in June 2005, and avers that those documents speak for themselves.  On that basis, Smith Micro denies the allegations of that paragraph.

27.    Answering paragraph 27 of the complaint, Smith Micro admits that Plaintiffs provided it with certain pricing information but denies all other allegations of the first two sentences.  Smith Micro lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations of paragraph 27 and, on that basis, denies the same.

28.    Answering paragraph 28 of the complaint, Smith Micro lacks sufficient information to form a belief as to the truth or falsity of those allegations and, on that basis, denies the same.

29.    Answering paragraph 29 of the complaint, Smith Micro admits that the parties engaged in discussions on or about June 23, 2005 regarding a proposed trip to the Netherlands on June 27, 2005 to conduct due diligence, but denies that Plaintiffs have accurately described the remainder of that dialogue and therefore denies the remaining allegations of that paragraph.

30.    Answering paragraph 30 of the complaint, Smith Micro avers that the exclusivity agreement speaks for itself and, on that basis, denies those allegations.

31.    Answering paragraph 31 of the complaint, Smith Micro avers that the exclusivity agreement speaks for itself and, on that basis, denies those allegations.

32.     Answering paragraph 32 of the complaint, Smith Micro avers that the exclusivity agreement speaks for itself and, on that basis, denies those allegations.

33.     Answering paragraph 33 of the complaint, Smith Micro admits that its representatives did not travel to the Netherlands on June 27, 2005 but avers that it provided prior notice to Plaintiffs that they would be unable to make that trip at that time and denies the remaining allegations of that paragraph.

34.     Answering paragraph 34 of the complaint, Smith Micro admits that Bruce Quigley called Diginext to explain why Smith Micro representatives were unable to visit Diginext at the time initially planned but denies the remaining allegations of the paragraph.

35.     Answering paragraph 35 of the complaint, Smith Micro admits that William Smith participated in a webcast in July 2005 regarding Smith Micro's purchase of Allume System but denies that Plaintiffs have accurately described his statements during that webcast and therefore denies the remaining allegations of the paragraph.

36.     Answering paragraph 36 of the complaint, Smith Micro admits that Diginext sent it an email on or about July 5, 2005 but avers that the document speaks for itself and, on that basis, denies the remaining allegations of the paragraph.

37.     Answering paragraph 37 of the complaint, Smith Micro admits that Edsard Ravelli reached Bruce Quigley in July 2005  **REDACTED**

but denies that Plaintiffs have accurately described the remainder of that dialogue and, on that basis, denies the remaining allegations of the paragraph.

7

38.     Answering paragraph 38 of the complaint, Smith Micro avers that its allegations consist largely of argument, not facts, avers that Plaintiffs have mischaracterized the documents to which they allude, and therefore denies the allegations of that paragraph.

39.     Smith Micro denies the allegations of paragraph 39 of the complaint and avers that Plaintiffs have mischaracterized the unspecified conversation to which these allegations refer.

40.     Answering paragraph 40 of the complaint, Smith Micro admits that it ceased negotiations with Plaintiffs in the summer of 2005, admits that it did not make a due diligence trip to Diginext's offices, and admits that it elected not to make an offer to purchase Diginext. It denies the remaining allegations of that paragraph, which consist of argument, not facts.

41.     Answering paragraph 41 of the complaint, Smith Micro admits that it did not meet Diginext's owners and officers in person, admits that it did not review Plaintiffs' original financial records and contracts, and avers that Plaintiffs failed and refused to provide such documents to Smith Micro despite its repeated requests. The remaining allegations of this paragraph contain argument, not facts, and Smith Micro therefore denies them.

42.     Smith Micro denies the allegations of paragraph 42 of the complaint.

43.     Answering paragraph 43 of the complaint, Smith Micro admits that Diginext made several requests for the termination fee, admits that it offered to send that payment to Diginext in return for a release of claims, and admits that Diginext never

responded to that offer.  The remaining allegations of this paragraph contain argument, not facts, and Smith Micro therefore denies them.

44.    Smith Micro denies the allegations of paragraph 44 of the complaint.

45.    Answering paragraph 45 of the complaint, Smith Micro admits that Diginext's attorneys sent a letter dated October 28, 2005, avers that the letter speaks for itself, and therefore denies Plaintiffs' allegations regarding that letter.  Smith Micro denies the remaining allegations of paragraph 45.

46.    Answering paragraph 46 of the complaint, Smith Micro lacks sufficient information to form a belief as to the truth or falsity of those allegations, and therefore denies the same.

47.    Smith Micro denies the allegations of paragraph 47 of the complaint.

48.    Smith Micro denies the allegations of paragraph 48 of the complaint.

49.    Smith Micro denies the allegations of paragraph 49 of the complaint.

50.    Smith Micro denies the allegations of paragraph 50 of the complaint.

51.    Smith Micro denies the allegations of paragraph 51 of the complaint.

52.    Smith Micro denies the allegations of paragraph 52 of the complaint.

53.    Smith Micro denies the allegations of paragraph 53 of the complaint.

## COUNT I – UNIFORM TRADE SECRETS ACT

54.    Answering paragraph 54 of the complaint, Smith Micro incorporates by reference its responses to paragraph 1 through 53 set forth above.

55.    Smith Micro denies the allegations of paragraph 55 of the complaint.

56.    Smith Micro denies the allegations of paragraph 56 of the complaint.

9

57.    Smith Micro denies the allegations of paragraph 57 of the complaint.

## COUNT II – UNFAIR COMPETITION

58.    Answering paragraph 58 of the complaint, Smith Micro incorporates by reference its responses to paragraph 1 through 53 set forth above.

59.    Smith Micro denies the allegations of paragraph 59 of the complaint.

60.    Smith Micro denies the allegations of paragraph 60 of the complaint.

## COUNT III – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

61.    Answering paragraph 61 of the complaint, Smith Micro incorporates by reference its responses to paragraph 1 through 53 set forth above.

62.    Smith Micro denies the allegations of paragraph 62 of the complaint.

63.    Smith Micro denies the allegations of paragraph 63 of the complaint.

64.    Smith Micro denies the allegations of paragraph 64 of the complaint.

## COUNT IV – BREACH OF THE DUTY TO NEGOTIATE IN GOOD FAITH

65.    Answering paragraph 65 of the complaint, Smith Micro incorporates by reference its responses to paragraph 1 through 53 set forth above.

66.    Smith Micro denies the allegations of paragraph 66 of the complaint.

67.    Smith Micro denies the allegations of paragraph 67 of the complaint.

68.    Smith Micro denies the allegations of paragraph 68 of the complaint.

## COUNT V – FRAUDULENT MISREPRESENTATIONS

69.    Answering paragraph 69 of the complaint, Smith Micro incorporates by reference its responses to paragraph 1 through 53 set forth above.

70.    Smith Micro denies the allegations of paragraph 70 of the complaint.

71.    Smith Micro denies the allegations of paragraph 71 of the complaint.

72.    Smith Micro denies the allegations of paragraph 72 of the complaint.

73.    Smith Micro denies the allegations of paragraph 73 of the complaint.

### COUNT VI – FRAUDULENT INDUCEMENT

74.    Answering paragraph 74 of the complaint, Smith Micro incorporates by reference its responses to paragraph 1 through 53 set forth above.

75.    Smith Micro denies the allegations of paragraph 75 of the complaint.

76.    Smith Micro denies the allegations of paragraph 76 of the complaint.

77.    Smith Micro denies the allegations of paragraph 77 of the complaint.

### COUNT VII – PROMISSORY ESTOPPEL

78.    Answering paragraph 78 of the complaint, Smith Micro incorporates by reference its responses to paragraph 1 through 53 set forth above.

79.    Smith Micro denies the allegations of paragraph 79 of the complaint.

80.    Smith Micro denies the allegations of paragraph 80 of the complaint.

81.    Smith Micro denies the allegations of paragraph 81 of the complaint.

82.    Smith Micro denies the allegations of paragraph 82 of the complaint.

### COUNT VIII – BREACH OF CONTRACT

83.    Answering paragraph 83 of the complaint, Smith Micro incorporates by reference its responses to paragraph 1 through 53 set forth above.

84.    Smith Micro denies the allegations of paragraph 84 of the complaint.

85.    Smith Micro denies the allegations of paragraph 85 of the complaint.

86.    Smith Micro denies the allegations of paragraph 86 of the complaint.

## COUNT IX – ACCOUNT STATED

87.    Answering paragraph 87 of the complaint, Smith Micro incorporates by reference its responses to paragraph 1 through 53 set forth above.

88.    Smith Micro admits the allegations of paragraph 88 of the complaint.

89.    Smith Micro denies the allegations of paragraph 89 of the complaint.

90.    Smith Micro denies the allegations of paragraph 90 of the complaint.

91.    Smith Micro denies the allegations of paragraph 91 of the complaint.

## ADDITIONAL DEFENSES

1.    The complaint fails to state a claim upon which relief can be granted.

2.    Plaintiffs are precluded from receiving any and all relief by virtue of their bad faith conduct and/or unclean hands.

3.    Because plaintiffs fraudulently induced Smith Micro to enter into the agreements at issue, they are unenforceable at law or in equity.

4.    Plaintiffs' claims are barred in whole or in part by the doctrines of waiver and/or estoppel.

5.    Plaintiffs' claims are precluded in whole or in part by their failure to mitigate damages.

6.    Plaintiffs' claims are barred by the doctrine of laches.

7.    Plaintiffs have not substantially performed their obligations under the agreements at issue.

8.    Plaintiffs are not entitled to preliminary or permanent injunctive relief because (i) they cannot demonstrate the requisite likelihood of success on the merits, (ii)

12

their remedy at law is adequate, and (iii) they cannot establish any risk of irreparable harm.

9. Plaintiffs' claims are barred by their own material breach of the agreements at issue.

10. Plaintiffs have failed to plead fraud with the requisite specificity.

11. Plaintiffs' claims for fraud and misrepresentations must fail because Smith Micro has not intentionally or recklessly misrepresented information for the purpose of misleading Plaintiffs.

12. Plaintiffs are not entitled to an award of punitive damages under any theory pled because Smith Micro has not acted in a willful, wanton or malicious manner.

## DEFENDANT/COUNTERCLAIM PLAINTIFF
## SMITH MICRO SOFTWARE INC.'S COUNTERCLAIMS

Smith Micro Software, Inc. ("Smith Micro") as and for its Counterclaim against Plaintiffs/Counterclaim Defendants WWTS B.V., Inext Holding B.V., Diginext B.V. and Multinext B.V., states as follows:

### PARTIES

1. Smith Micro is a Delaware corporation with its principal place of business in Aliso Viejo, California.

2. On information and belief, Counterclaim Defendant WWTS B.V. is a Netherlands Antilles company with its principal place of business in Amstelveen, the Netherlands.

13

3.      On information and belief, Counterclaim Defendant Inext Holding B.V. is a Netherlands company with its principal place of business in Amstelveen, the Netherlands.

4.      On information and belief, Counterclaim Defendant Diginext B.V. is a Netherlands company with its principal place of business in Amstelveen, the Netherlands.

5.      On information and belief, Counterclaim Defendant Multinext B.V. is a Netherlands company with its principal place of business in Amstelveen, the Netherlands.

6.      In engaging in the wrongful acts described herein, each Counterclaim Defendant acted as the agent and/or alter ego of the other Counterclaim Defendants. The Counterclaim Defendants are collectively referred to herein as "Diginext."

## JURISDICTION AND VENUE

7.      If the Court has subject matter jurisdiction, on the grounds that the amount in controversy exceeds $75,000 exclusive of interest and costs, the Court's subject matter jurisdiction extends to these counterclaims.

8.      If the Court has subject matter jurisdiction, venue is proper in this Court.

## GENERAL ALLEGATIONS

9.      Both Smith Micro and Diginext make connectivity software for wireless communications.

10.     In early 2005, Smith Micro decided to explore opportunities to expand its wireless software business overseas. Smith Micro's management saw Diginext as a potential means to provide it with a foothold in the European market.

14

11.    In February 2005, Bruce Quigley, Smith Micro's Vice President of Business Development and Investor Relations, called Edsard Ravelli, Diginext's President, to ask whether Diginext might be willing to sell its business to Smith Micro. Ravelli expressed interest in such a transaction.

12.    The parties entered into a Confidentiality Agreement dated February 28, 2005. The Confidentiality Agreement provides in part that "[e]xcept to the extent required by law, neither party shall disclose the existence or subject matter of the negotiations or Proposed Transaction contemplated between the parties."

13.    On or about March 31, 2005, Diginext provided preliminary information to Smith Micro in the form of an "Information Memorandum" and "Product and Service Description." These documents as well as oral statements by Diginext early in the negotiations included material misrepresentations and omissions concerning Diginext's business and its customers' interest in ongoing and future relationships with Diginext.

14.

# REDACTED

15.    **REDACTED**

16.    **REDACTED**

17.    **REDACTED**

18.    **REDACTED**

19.    Diginext's apparent strategy was to induce Smith Micro to commit to a price range before it disclosed any real details about its business. It attempted to make Smith Micro so invested in the concept of an acquisition that any later disclosure of

16

Diginext's actual business, including the Diginext-Vodafone relationship, would not derail negotiations.

20.     Because it did not know the true nature of the Diginext-Vodafone relationship, Smith Micro proceeded with negotiations and preliminary due diligence. Diginext provided certain financial information to Smith Micro in a series of communications between March and May 2005. Smith Micro repeatedly asked Diginext to provide customer contracts, but Diginext failed and refused to do so. Those contracts would have revealed the true nature of the agreement between Diginext and Vodafone.

21.     Diginext promised to reveal further details about its business if Smith Micro would enter into an Exclusivity Agreement. Accordingly, Smith Micro signed an Exclusivity Agreement on or about June 10, 2005. The Exclusivity Agreement required Smith Micro to pay Diginext a $25,000 termination fee under specified circumstances.

22.     After the Exclusivity Agreement was signed, Diginext provided Smith Micro with additional, more detailed information on or about June 20, 2005. This later disclosure included Diginext's financial statements along with its financial projections for 2005-2007.

23.     Upon review of this information, Smith Micro's management learned for the first time, as set forth above, the true facts concerning the Diginext-Vodafone relationship.

24.

# REDACTED

# REDACTED

25.                    **REDACTED**

26.    Notwithstanding its own bad faith during the parties' negotiations, Diginext accused Smith Micro of acting in bad faith and demanded payment of the $25,000 termination fee.

27.    Because of Diginext's accusations, Smith Micro offered to pay the termination fee in exchange for a release despite the fact that it had been induced to sign the Exclusivity Agreement based on misrepresentations by Diginext. Diginext did not accept that offer. Smith Micro then sent a check for the termination fee despite Diginext's failure to act in good faith.

## COUNT I

### RESCISSION

28.    Smith Micro incorporates by reference the allegations set forth in paragraphs 1-27 of this Counterclaim as if fully set forth herein.

29.    The Exclusivity Agreement was induced by fraud. Diginext intentionally or recklessly misrepresented the nature of its business with the intent of inducing Smith

Micro to obligate itself to pay a termination fee. Smith Micro did not know the truth regarding those facts at the time it entered into the Exclusivity Agreement and reasonably relied on Diginext's misrepresentations, to its detriment.

30.     Smith Micro is entitled to rescission of the Exclusivity Agreement.

## COUNT II

### BREACH OF EXCLUSIVITY AGREEMENT

31.     Smith Micro incorporates by reference the allegations set forth in paragraphs 1-30 of this Counterclaim as if fully set forth herein.

32.     If the Exclusivity Agreement is found to be enforceable, it is a valid and binding contract.

33.     Smith Micro has performed all conditions and obligations to be performed on its part under the Agreement except for those terms which have been excused or waived.

34.     Diginext breached the Exclusivity Agreement by, *inter alia*, failing and/or refusing to provide information concerning its true value and its projected future income.

35.     As a direct, foreseeable, and proximate result of Diginext's breach of the Agreement, Smith Micro has been damaged in an amount to be proven at trial.

## COUNT III

### BREACH OF CONFIDENTIALITY AGREEMENT

36.     Smith Micro incorporates by reference the allegations set forth in paragraphs 1-35 of this Counterclaim as if fully set forth herein.

37.     The Confidentiality Agreement is a valid and binding contract which contains obligations that survive termination of the parties' contractual relationship.

19

38.     Smith Micro has performed all conditions and obligations to be performed on its part under the Agreement except for those terms which have been excused or waived.

39.     Diginext breached the Confidentiality Agreement by disclosing material information to third parties, including the existence of the negotiations between Smith Micro and Diginext.

40.     As a direct, foreseeable, and proximate result of Diginext's breach of the Agreement, Smith Micro has been damaged in an amount to be proven at trial.

## COUNT IV

### BREACH OF DUTY TO NEGOTIATE IN GOOD FAITH

41.     Smith Micro incorporates by reference the allegations set forth in paragraphs 1-40 of this Counterclaim as if fully set forth herein.

42.     Diginext breached its duty to negotiate in good faith in connection with its negotiations with Smith Micro and the Exclusivity Agreement.

43.     As a result of Diginext's failure to negotiate in good faith, Smith Micro has suffered damages in an amount to be proven at trial.

## COUNT V

### FRAUDULENT MISREPRESENTATIONS

44.     Smith Micro incorporates by reference the allegations set forth in paragraphs 1-43 of this Counterclaim as if fully set forth herein.

45.     During all relevant times, Diginext made intentional or reckless misrepresentations of material fact to Smith Micro and omitted to disclose material facts

regarding its customer relationships.  Smith Micro justifiably relied on Diginext's misrepresentations to its detriment and without knowing the true facts.

46.    Diginext misrepresented and concealed material facts regarding its relationships with Vodafone and other customers.

47.

# REDACTED

48.

# REDACTED

49.    # REDACTED

50.    Because Smith Micro's management believed that Diginext was negotiating in good faith, Smith Micro agreed to the terms of the Exclusivity Agreement, including the provision relating to a termination fee, and continued to expend valuable time, effort and money conducting due diligence toward an acquisition of Diginext.

51.    During all relevant times, Smith Micro did not know that Diginext's representations were false, and reasonably and justifiably relied on those representations. Smith Micro was therefore fraudulently induced by Diginext to take the actions described

above. During all relevant times, Diginext acted with the intent to defraud Smith Micro, and did so defraud Smith Micro by making the misrepresentations and omissions of material fact described above.

52. As a result of Diginext's fraudulent conduct, Smith Micro has suffered damages in an amount to be proved at trial.

## COUNT VI

### FRAUDULENT INDUCEMENT

53. Smith Micro incorporates by reference the allegations set forth in paragraphs 1-52 of this Counterclaim as if fully set forth herein.

54. Diginext fraudulently induced Smith Micro to sign the Exclusivity Agreement and to expend valuable time, efforts and money conducting due diligence toward an acquisition of Diginext based on the misrepresentations and omissions set forth above.

55. As a result of Diginext's fraudulent inducement, Smith Micro has suffered damages in an amount to be proved at trial.

## COUNT VII

### DECLARATORY RELIEF

56. Smith Micro incorporates by reference the allegations set forth in paragraphs 1-55 of this Counterclaim as if fully set forth herein.

57. An actual controversy exists between the parties regarding their rights and duties under the Exclusivity Agreement, as described more specifically above.

58.    Smith Micro is entitled to a declaration from this Court that the

Exclusivity Agreement, including the provision requiring Smith Micro to pay a

termination fee, is unenforceable because it was induced by Diginext's fraudulent

misrepresentations and/or because Diginext breached that agreement.

WHEREFORE, Smith Micro prays that this Court:

(a)    Find in favor of Smith Micro as to all counts in Plaintiffs' Complaint;

(b)    Declare that the Exclusivity Agreement is unenforceable and that Diginext

is not entitled to the termination fee;

(c)    Award compensatory damages to Smith Micro based on Diginext's breach

of contract and breach of duty to negotiate in good faith;

(d)    Award Smith Micro its costs and reasonable attorneys' fees; and

(e)    Award such other relief as the Court deems just and proper.

MORRIS, JAMES, HITCHENS &
WILLIAMS LLP


Dated:  December 7, 2005

Lewis H. Lazarus (I.D. No. 2374)
Matthew F. Lintner (I.D. No. 4371)
Patricia R. Uhlenbrock (I.D. No. 4011)
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19899
(302) 888-6800
Attorneys for Defendant Smith Micro Corporation

23

Of Counsel:

Kathleen Lowe
Dorsey & Whitney LLP
38 Technology Drive
Irvine, CA 92618
Tel. (949) 932-3666
Fax (949) 932-3601
email: lowe.kathlene@dorsey.com

1317806/3

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of December, 2005, I electronically filed the public version of **SMITH MICRO SOFTWARE, INC.'S ANSWER AND COUNTERCLAIMS** with the Clerk of the Court using CM/ECF which will send notification of such filing to counsel of record for the plaintiffs listed below.

> David L. Finger, Esquire
> Finger & Slanina, LLC
> One Commerce Center
> 1201 Orange Street, Suite 725
> Wilmington, DE 19801-1155

Patricia R. Uhlenbrock (#4011)
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
**puhlenbrock@morrisjames.com**

Attorneys for Defendant

1320217/1